UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JULIUS AND ARLYN SPEARS | CIVIL ACTION |
| VERSUS | NO. 08-3183 |
| STATE FARM INSURANCE COMPANY | SECTION "N" (3) |

## **O R D E R and R E A S O N S**

Before the Court are two motions, both filed by Defendant:

(1) for Partial Summary Judgment on Plaintiffs' Claim for Contents Damaged by Alleged Looting (Rec. Doc. 23), and

(2) Motion for Partial Summary Judgment on Bad Faith (Rec. Doc. 24).

Both motions are opposed. After considering the complaint, the memoranda, and the applicable law, the Court rules as set forth herein.

### **I. BACKGROUND**

Plaintiffs Julius and Arlyn Spears ("the Spears") own property at 8201 Apricot Street in New Orleans, Louisiana, which at the time Hurricane Katrina made landfall on August 29, 2005, was insured by a contract of homeowner's insurance with Defendant State Farm Insurance Company ("State Farm"). The policy provided coverage of up to $179, 700 for the dwelling, up to $17,790 for dwelling extension, contents up to $134,775, and loss of use for up to 24 months. The Spears also had a flood insurance policy with Travelers Insurance for flood coverage of up

to $121,000 for the building and $15,800 for contents.

State Farm opened a claim file on the Spears' policy on September 8, 2005, and shortly thereafter issued the Spears a $2,500 advance. The Spears were unable to retrieve the advance check from State Farm's office and it is unclear whether they provided State Farm with their new mailing address. *See* Reply at Ex. 4 (Arlyn Spears deposition, p. 46, ll. 14-16). Adjustors inspected the property on November 3, 2005, and November 6, 2005. On November 25, 2005, the Spears were paid $55,205.87 for dwelling loss and $21,096 for contents and loss of use. State Farm also opened a separate claims file on February 6, 2006, on the Spears' claim for damages caused by looters, but the claim has not been paid. Plaintiffs filed the instant suit on August 29, 2007, in the Civil District Court for the Parish of Orleans. State Farm removed the suit to this Court on May 6, 2008. On May 8, 2009, State Farm made an unsolicited tender of $18,960.13 after an expert evaluation found additional uncompensated damages at the Spears' property.

## II. ANALYSIS

### A. Standard for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof

at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response

to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**C. Motion for Partial Summary Judgment as to Bad Faith Claims**

Sections 22:1892 and 22:1973 do not penalize insurance companies for failing to pay claims, but for failing to pay claims in a manner that is "arbitrary, capricious, or without probable cause." LA. REV. STAT. § 22:1892(B)(1); LA. REV. STAT. § 22:1973(B)(5).[1] Under both penalty statutes, Plaintiffs bear the burden of proving (1) that Defendant received satisfactory proof of loss; (2) failed to pay the claim within the applicable statutory period; and (3) that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probable cause. *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746, 752 (La. App. 1999). "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is *clear* that the insurer

---

[1] Effective January 1, 2009, LA. REV. STAT. ANN. § 22:1220 was renumbered § 22:1973. By the same act, LA. REV. STAT. ANN. § 22:658 was renumbered § 22:1892. *See* Acts 2008, No. 415, § 1. The Court will cite to the new numbering despite the parties' use of the old statute numbers.

4

was in fact arbitrary, capricious, or without probable cause in refusing to pay." *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003) (emphasis added); *see also Holt v. Aetna Cas. & Sur. Co.*, 680 So. 2d 117, 130 (La. App. 1996) ("In bad faith actions, the insured is seeking extra-contractual damages, as well as punitive damages. Therefore, the insured's burden is great."). The statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. *Reed*, 857 So. 2d at 1020-21.

Plaintiffs have offered no evidence to suggest that Defendant adjusted their claim in bad faith and thus fail to meet their initial burden. At their depositions, both Plaintiffs were unable to contravene items from the claims file that suggested that they were satisfied with the adjustment of their policy:

> Q: Then Mr. Walker says he took new photos of the last two items and then the next sentence says, "Policyholder, PH," that would mean policy holder, "satisfied with building estimate." Did you tell Mr. Walker you were satisfied with the building estimate he had prepared?
> A: I don't remember.

Reply at Ex. 3 (Julius Spears deposition, p. 63, ll. 5-10) (Rec. Doc. 74)

> Q: Okay. And Ms. Spears, it says about halfway down to the entry, "Spoke to Mrs. Spears today and described my scope of damage and approach to repair. I told her that we would replace roof with 50-year laminated shingles rather than asbestos. I also told her about refinishing the floors. She accepted these approaches to repair." Is that an accurate representation with Mr. Walker on that day?
> A: I don't remember.

Reply at Ex. 4 (Arlyn Spears deposition, p. 49, ll. 2-9) (Rec. Doc. 74). Nor could either Plaintiff recall ever putting State Farm on notice prior to the filing of the instant lawsuit that the amounts paid out under the policy were insufficient:

> Q: Okay. And at no time do you recall ever sending any additional

contents list to State Farm. Am I correct?
A: Not to my knowledge.

Reply at Ex. 3 (Julius Spears deposition, p. 65, ll. 5-6).

Q: Subsequent to your last conversations with State Farm on your claim, have you gathered any additional documents or evidence of living expenses?
A: No, I have not.

*Id.* (p. 25, ll. 16-21).

Q: Okay. I'm almost done. After you received the proceeds from the homeowner's settlement that we talked about, the $55,205 check and $21,096 check, did you ever call State Farm back and say that's not enough money to compensate us for our loss?
A: No, I didn't.

Reply at Ex. 4 (Arlyn Spears deposition, p. 49, ll. 17-22).

Q: And rather than trying to renegotiate with State Farm or submit additional documents or additional information in support of your claim, you opted to file a lawsuit, is that correct?
A: Uh-huh.

*Id.* (p. 50, ll. 1-5). Nor could Mr. Spears, when asked, point to any facts supporting his

contention that State Farm deliberately underpaid his claim.

Q: Okay. Do you have any facts within your knowledge to support your contentions you made just a moment ago that State Farm attempted to make minimum payouts on claims?
A: No.
Q: Or is that just scuttlebutt that you've heard in the public domain?
A: My perception.
Q: Just your perception, okay.
A: Right. No facts.
Q: Do you have any facts to support your contention you made just a moment ago that it's not accidental as to State Farm not looking after the client's well-being? Is that just your perception as well?
A: My perception. No facts.

Reply at Ex. 3 (Julius Spears deposition, p. 78-79, ll. 20-25, 1-9). In fact, the basis of Mr.

Spears' claim for bad faith seems to be that State Farm was not sufficiently concerned about his family's welfare after the hurricane.

> Q: Okay. Thank you. Mr. Spears, have you been satisfied with how State Farm has handled this claim?
> A: No, I haven't.
> Q: Could you please expound on that answer?
> A: As a loyal State Farm client for many years, I just feel like State Farm is more concerned about the dollars to be expended as opposed to me and my family's welfare. At no point do I get a sense of urgency to make sure that we're okay. It seems to be more defensive from the perspective of how many dollars I might have to pay out. And again, my wife has health problems, significant health problems, and that has, at no point, been a question asked by anybody from State Farm in terms of how she's doing. We have been very diligent in terms of our payments to State Farm on a regular basis and it's just disappointing that we have to go through such a tedious process just to be able to get our home back.

*Id.* (p. 76, ll. 3-18). Even assuming Mr. Spears is correct in his contention about State Farm's lack of concern, failing to "check in" on the welfare of insureds is not sufficient to trigger the bad faith statutes. While there is clearly a dispute about coverage, no evidence has been offered that supports a finding of bad faith.

Plaintiffs point to Defendant's recent unsolicited tender as evidence of bad faith, noting that the defendant insurer in *Dickerson v. Lexington Insurance Company* also made an unsolicited tender on the eve of trial. *See Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 300 (5th Cir. 2009). It is also the case, however, that "[w]ithout more, an insurer's payment of less than the full value of an insured's loss is insufficient evidence of arbitrary and capricious behavior . . . ." *Id.* at 299. In *Dickerson*, there was much more than one unsolicited tender to support a finding of bad faith. For example, the tender in *Dickerson* was for more than $103,000, which was nearly six-and-a-half times the amount that had been previously paid under the policy. In addition, in that case the plaintiff made repeated efforts to challenge the sufficiency of the

insurer's payment. *Id.* at 300 ("Dickerson's daughter testified at trial that she and her brother repeatedly called Lexington about the insufficiency of the payment but never got a response."). The insurer was also unable to produce any evidence that it disputed the plaintiff's claim in that case; it simply failed to pay. *Id.* In this case, the insurer relied on its adjustment in paying out the claim, which adjustment was apparently not challenged then or at any time until the filing of suit; and when a later adjustment found additional damage, the insurer paid out more. The accuracy of these adjustments are obviously at issue, but no evidence of bad faith has been adduced, and accordingly the motion is granted.[2]

**C. Motion for Partial Summary Judgment as to Looting Claims**

Defendants also move for summary judgment on Plaintiffs' claim for damages from looting, arguing that this claim was not pled in the complaint and that the prescription period has run. Defendant also argues at length that the extension of the prescription period for Katrina claims by the Louisiana state legislature does not apply in this instance. *See* LA. REV. STAT. ANN. § 22:1894.[3]

As early as the first inspection of Plaintiffs' home by State Farm adjustors, the Spears claimed that they had sustained damage due to looting. *See* Opp. At Ex. 1 (p. 4, Spears claim file). A separate looting claim file was opened on February 6, 2006, and Plaintiffs were sent forms to fill out to itemize personal property lost or damaged by looting. Mot. at Ex. C (p.12).

---

[2] Because the Court is granting the motion as to the bad faith claims, it need not consider Defendant's arguments concerning whether the 2005 version of the statutes, or the post-Katrina amended versions, apply in this instance.

[3] The Court **GRANTS** the three outstanding motion for leave to file memoranda on this issue, Rec. Docs. 69, 84, and 86.

These completed forms were not sent back to State Farm until August 30, 2007. *Id.* (p. 16). State Farm requested that the Spears obtain an amended police report, as the documentation received from Plaintiffs did not match the police report forwarded to State Farm, which showed a much less extensive loss. *Id.* This amended report was not received prior to the filing of the instant suit and, apparently, has not been received to date. Accordingly, the claim has not been paid.

Plaintiffs did not allege in their complaint that State Farm failed to pay their claim for damages caused by looting; indeed, there was no mention of looting anywhere in the allegations. *See* Compl. at ¶ 3 (alleging damage to "physical structures and improvements . . . caused by hurricane Katrina and later hurricane Rita, both of which struck the New Orleans metropolitan area"). Additionally, Plaintiffs moved to amend the complaint to add a claim for damages from failure to pay a looting claim, a motion that Magistrate Judge Knowles recently denied. *See* Rec. Doc. 87. Given that State Farm denies that there is a claim for damages from looting in this suit and Plaintiffs have moved to include one (which motion was denied), it is apparently undisputed that there is no looting claim in the instant suit. It is unclear, however, precisely what Defendant has asked the Court to do in the instant motion, since it would be entirely inappropriate for the Court to make conclusions of law about the applicability of § 1894 to a claim that is not before the Court. Accordingly, the motion is denied as moot. The parties can, if they wish, file motions in limine regarding the relevance of evidence of looting at 8201 Apricot Street to the question of Defendant's alleged liability for underpayment of Plaintiffs' claim.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the Motion for Partial Summary Judgment as to Bad Faith Claims is **GRANTED**, and the Motion for Partial Summary Judgment

9

as to Looting Claims is **DENIED AS MOOT**.

New Orleans, Louisiana, this 12th day of June, 2009.

_____
**KURT D. ENGELHARDT**
**United States District Judge**